[Doc. Nos. 38, 39, 45]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ACCESS 4 ALL, INC., et al., :<br><br>        Plaintiffs, :<br><br>    v. :<br><br>AAMJ, LLC, et al., :<br><br>        Defendants. : | Civil No. 04-6059 (JHR) |

## OPINION

This matter is before the Court on plaintiffs' Motion for Reargument of their Motion for Approval and Entry of Consent Decree and for an Award of Attorneys' Fees, Litigation Expenses and Costs [Doc. No. 38]. Although titled a "Motion for Reargument", plaintiffs are asking this Court to reconsider the August 9, 2006 Order [Doc. No. 37] of the Honorable Joel B. Rosen, U.S.M.J., denying plaintiffs' Motions for Approval and Entry of Consent Decree.[1]  The Court heard oral argument on plaintiffs' motion on December 6, 2006.  For the reasons to be discussed, this Court: (1) grants plaintiffs' Motion for Reconsideration; (2) deems the parties to have settled this litigation on December 6, 2006 pursuant to the terms of the agreed upon Consent Decree attached to the accompanying Order; and (3) enters an Order deeming plaintiffs

_____

[1]This opinion will use the term "reconsideration" rather than "reargument" to be consistent with the phraseology in the Local Rules of Civil Procedure. Further, Judge Rosen retired from the bench shortly after his August 9, 2006 Order was issued. This Court was sworn-in on October 31, 2006.

to be prevailing parties and awarding plaintiffs attorney's fees and costs in the total amount of $29,012.49.

Background

In order to understand the background of plaintiffs' present motion it is essential to set forth a detailed summary of the cumbersome history of the parties' settlement negotiations.

On December 6, 2004, plaintiffs filed their complaint pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12 181, et seq. [Doc. No. 1].  Plaintiffs allege defendant owns and operates a Quality Inn & Suites hotel/motel located in Atlantic City, New Jersey, that violates the ADA.  Despite the contentious nature of this litigation, the parties started serious settlement negotiations as early as April, 2005.  The record reflects that plaintiffs forwarded defendant a proposed Consent Decree on April 4, 2005.[2]  The parties thereafter negotiated the language of the Decree and plaintiffs sent defendant another version on July 13, 2005. Defendant suggested changes on July 18, 2005.  Plaintiffs rejected these changes on August 9, 2005.  On August 11, 2005, plaintiffs wrote Judge Rosen and advised him that "[t]he parties are extremely close to settlement" but "this case has not been settled."  (See August 11, 2005 letter of Alan R. Ackerman,

---

[2]Copies of most of the relevant correspondence exchanged between plaintiffs and defendant is included as part of Exhibit 5 to plaintiffs' November 28, 2005 Motion for Attorneys' Fees, Costs and Expert's Fees [Doc. No. 17].

Esquire, to Judge Rosen, p. 2).  Plaintiffs noted in the same
letter, "there are still a few loose ends that remain. Id.  On
August 19, 2005, defendant wrote plaintiffs, "the only issue that
has ever been an issue in this matter is whether or not defendant
will pay costs and attorney fees to Plaintiff." (See August 19,
2005 letter of Mark W. Rinkus, Esquire to Judge Rosen).  On
September 26, 2005, defendant wrote plaintiffs and suggested
substantive changes to the latest version of the draft Consent
Decree.  Defense counsel specifically noted in his letter that his
client had not yet approved his suggested modifications. On October
4, 2005, plaintiffs' counsel wrote defendant, "I am optimistic that
we have finally reached a settlement on all issues except for the
amount of attorneys' fees, costs and expert fees."  Subsequent to
this letter defense counsel did not follow up and never confirmed
to plaintiffs that the parties agreed on all settlement terms.
Based upon these communications it is clear that as of October 4,
2005, the parties had not yet agreed upon the final settlement
terms.  Further, it is just as clear that whether attorney's fees
would be paid to plaintiffs, and if so the amount, was a material
settlement term.

Frustrated at the status of the ongoing settlement
negotiations, plaintiffs filed a Motion for Attorneys' Fees, Costs
and Expert Fees on November 28, 2005 [Doc. No. 17].  Plaintiffs
argued that although the Consent Decree had not yet been signed,

"Defendant's counsel verbally approved of the Consent Decree, except for the issue of the amount of attorneys' fees." (See Plaintiffs' Verified Application, p. 3, Doc. No. 17-1). Plaintiffs' motion asked the court to deem the parties dispute settled pursuant to a Consent Decree that had not been signed or approved by defendant, and further asked for an award of fees and costs. Plaintiffs' motion was improvidently granted on January 17, 2006 [Doc. No. 18].  On January 25, 2006, defendant confirmed to Judge Rosen that his client, "has not approved every last detail of the [consent] order as he is entitled to do."  On March 8, 2006 [Doc. No. 23] the January 17, 2006 Order was vacated based on the representation of defense counsel that he did not receive notice of plaintiffs' motion.

Plaintiffs refiled their Motion for Attorneys' Fees, Costs and Expert Fees [Doc. No. 25] on April 19, 2006, which defendant opposed [Doc. No. 29].  Plaintiffs again argued their Consent Decree should be approved and entered because the parties agreed on all settlement terms except the payment of attorney's fees.  In response, defendant clearly indicated that it did not approve of plaintiffs' Consent Decree and there was still a dispute as to the payment of fees. (See Affidavit of Mark W. Rinkus, Esquire, ¶¶ 14, 19 and 20, Doc. No. 29).  Indeed, as late as August 8, 2006, defendant wrote plaintiffs and confirmed that the parties had not agreed on the payment of attorney's fees.  (See August 8, 2006

4

letter from Mr. Rinkus to plaintiffs).

When the parties appeared before Judge Rosen on August 9, 2006, it was evident they had not reached a final settlement. Therefore, it should have come as no surprise to plaintiffs that Judge Rosen denied their motion.   Judge Rosen's August 9, 2006 Order correctly noted that he could not force the defendant to settle: "[t]here is no authority that would permit the court to compel a party to settle a claim.   The defendants have not signed the consent decree.   Thus, the court will deny the plaintiffs' motion for approval and entry of the consent decree.   Although the defendants have indicated an intention to settle the case, they have not yet consummated settlement.   Consequently, the motion to set attorneys' fees is premature, and it too shall be denied without prejudice." [Doc. No. 37].

Plaintiffs filed their present Motion for Reconsideration on August 16, 2006.   Since there was so much confusion regarding the version of the Consent Decree plaintiffs alleged the defendant agreed to, plaintiffs were directed to send the Court a copy of the Decree they wanted enforced.   Plaintiffs filed this document on December 4, 2006 [Doc. No. 41].   On the same day defendant filed its opposition to plaintiffs' Motion for Reconsideration and attached the "Consent Decree with modifications ... [defendant] requires before executing same...."   (See December 4, 2006 letter of Mr. Rinkus to this Court).   Although the versions of the Consent

5

Decree plaintiffs and defendant served on December 4, 2006 were similar, they were not identical. A comparison of the parties' December 4, 2006 submissions is conclusive evidence that even as late as this date, the parties still did not agree on the final settlement terms.

On December 6, 2006, this Court held oral argument on plaintiffs' Motion for Reconsideration. On that day the parties finally agreed to settle. Plaintiffs' counsel reviewed the suggestions made by defendant in his December 4, 2006 submission and agreed to all the changes. (See Transcript of December 6, 2006 oral argument ("Tr.") at 19:14 – 22:15). In response, defense counsel confirmed that the settlement terms he proposed on December 4, 2006 were still agreeable and that it was appropriate for the Court to rule that the parties settled. Id. at 18:19-25.[3] Accordingly, on December 6, 2006 the parties finally agreed on all material settlement terms and settled this litigation.

---

[3]The Transcript reads:

THE COURT: [W]hy shouldn't I rule that the parties agree to settle according to all the terms that are in the consent decree, except for what you marked up and we'll leave the determination of attorneys fees for the Court's decision? Why shouldn't I rule that way? MR. RINKUS: There's no reason why you shouldn't rule that way today.

The Court also asked defense counsel if the Court could issue an Order entering the Consent Decree as he marked it up. His response was, "I believe there is case law that allows the Court to do that." Id. at 19:1-19.

6

Discussion

Enforcement of the Parties' Consent Decree

Plaintiffs' motion is governed by L. Civ. R. 7.1 (i) which states:

> A motion for reconsideration shall be served
> and filed within ten (10) business days after
> the entry of the order or judgment on the
> original motion by the Judge or Magistrate
> Judge.   A brief setting forth concisely the
> matter or controlling decisions which the
> party believes the Judge or Magistrate Judge
> has overlooked shall be filed with the Notice
> of Motion.

A motion under Rule 7.1(i) may be granted only when: (1) there has been an intervening change in the controlling law; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or to prevent manifest injustice. May's Seafood Café ex rel. Lou-Ann, Inc. V. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  It is widely recognized that motions for reconsideration are granted sparingly.  See Resorts International, Inc. V. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 (D.N.J. 1992).

This case is one of the rare instances where good cause exists to grant plaintiffs' reconsideration motion.  This is true because key evidence is now available that was not and could not have been presented to Judge Rosen on August 9, 2006.  See Harsco Corp. V. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)(the purpose of a motion for reconsideration is to correct errors of law or to present

7

"newly discovered evidence"). When Judge Rosen decided plaintiffs'
motion on August 9, 2006, the parties had not agreed on all
material settlement terms. Plaintiffs' original motion argued that
defendant had agreed to the settlement terms in November, 2005.
(See Tr. at 13:7-12). Defendant argued this was "absolutely
false." (See Tr. at 16:21-24). Defendant's position that the
parties did not settle as of August 9, 2006 is correct. The record
clearly shows that as of this date the parties had not yet agreed
upon all material settlement terms including, but not limited to,
whether attorney's fees would be paid and if so the amount.
Plaintiffs argued, "[t]he fact that the parties had not agreed upon
attorneys' fees does not vitiate the valid settlement that reached
[sic] between the parties." (See Plaintiffs' Brief in Support of
Motion for Reconsideration, p.6.) Plaintiffs are wrong. "Under
New Jersey law, a settlement agreement is a form of contract, and
courts must look to the general rules of contract law to resolve
disputes over a settlement agreement." Mortellite v. Novartis Crop
Protection, Inc., 460 F.3d 483, 492 (3d Cir. 2006). There is no
settlement if the parties do not agree upon an essential settlement
term. See Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992);
Pascarella v. Bruck, 190 N. J. Super 118, 126 (App. Div. 1983),
cert. denied, 94 N.J. 600 (1983).

Whether plaintiffs and defendant entered into an enforceable
Consent Decree is governed by federal common law, which is

determined primarily by reliance on New Jersey contract law. United States v. Lightman, 988 F. Supp. 448, 457 (D.N.J. 1997).[4] As noted in Lightman, a contract is formed where there is an offer and acceptance and the terms are sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. Id. at 458 (citations omitted). A contract is "enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms." Id. However, if "the parties do not agree on one or more essential terms ... courts generally hold that the agreement is unenforceable." Id. Since it was plain that the payment of attorney's fees and other substantive issues were material to the settlement between the parties, and the parties did not agree upon all of these issues as of August 9, 2006, Judge Rosen's Order was completely justified and appropriate.

Nevertheless, the instant Motion for Reconsideration will be granted because unlike the situation that existed in August, 2006, the parties agreed upon the final settlement terms on December 6, 2006. As noted, a final contract or settlement is reached when the parties agree upon all material settlement terms and agree to be bound by those terms. Id. at 457-58. This is precisely what happened on December 6, 2006. Defendant admitted at oral argument

_____

[4]A Consent Decree is merely a vehicle to enforce a settlement agreement. See Hartland Payments Systems, Inc. V. Merchant Services of America, Corp., C. A. No. 06-2811 (MLC), 2006 WL 3779764, *2 (D.N.J. 2006).

that he agreed to settle according to the terms in the circulating draft of the Consent Decree, except for what he marked up, and that the settlement was not contingent on an agreement to pay a specific amount of attorney's fees.   (See Tr. at 18:19-25 - 19:1-9). Plaintiffs specifically agreed to all of defendant's changes and settlement terms and stated "It's fine."    See Tr. at 19:18. Accordingly, as of December 6, 2006 the parties settled.

It is of no moment to the enforceability of the parties' Consent Decree that the parties have not yet formally signed the document.   An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties whether or not it is reduced to writing.   Pascarella, supra, 190 N.J. Super at 124; see also Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).    In Pascarella, the court wrote, "parties may orally, by informal memorandum, or by both agree on all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking." 190 N.J. Super. at 126 (quoting Comerata v. Chaumount, Inc., 52 N.J. Super 299, 305 (App. Div. 1958)).

Attorney's Fees

Since the parties settled this case, the Court must decide plaintiffs' application for fees and costs.    The payment of attorney's fees was specifically addressed in the parties' Consent

10

Decree:

> Counsel for the parties has been unable to
> determine the Plaintiffs' attorneys' fees
> including litigation expenses, expert's fees
> and costs to be paid, and has agreed the
> amount to be paid by Defendant shall be
> determined by the District Judge or a
> Magistrate Judge as the Court deems
> appropriate.  If determined by a Magistrate
> Judge, the parties agree that the Magistrate
> Judge may enter a final judgment pursuant to
> 28 U.S.C. §636(c).  Upon notifying the Court
> of the settlement of this action, the parties
> shall request the Court to refer this matter
> to the United States Magistrate for
> determination of the amount of fees,
> litigation expenses and costs to be awarded.

See Consent Decree, ¶I.B.  Pursuant to the parties' agreement, this Court will determine the appropriate amount of attorney's fees and costs to award plaintiffs.

Attorney's fees, expert fees and litigation expenses and costs are recoverable under the ADA.  See 42 U.S.C. §12205.  In order to recover attorney's fees the plaintiff must be a "prevailing party." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health, 532 U.S. 598 (2001).  In order to be a prevailing party a plaintiff must either obtain a judgment on the merits or a court-ordered Consent Decree.  As noted in Buckhannon, court-ordered Consent Decrees create a material change in the legal relationships of the parties, the kind required to permit and award a prevailing party attorney's fees under a fee-shifting statute.  Id. at 604. Since the parties entered into an enforceable Consent Decree, plaintiffs are entitled to recover their fees and costs.

11

Under the ADA a "lodestar" amount is the starting point for determining reasonable attorney's fees. Lanni v. State of New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). The lodestar is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Id. The lodestar is the presumptively reasonable fee. Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey, 297 F.3d 253, 265 n. 5 (3d Cir. 2002). The party seeking fees has the burden of producing sufficient evidence of what constitutes a reasonable market rate in light of the nature of the legal services performed. Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). If a *prima facie* case is made, the opposing party has the burden of producing evidence to contest the rate. Id. When attorney's fees are awarded the current market rate must be used. Lanni, 259 F.3d at 149. The current market rate is the rate at the time of the fee petition, not the rate when the services were performed. Id. "A current market rate is exactly that – a reasonable rate based on the currently prevailing rates in the community for comparable legal services." Id. at 150.

After the lodestar amount is calculated a court has discretion to adjust the fee up or down based on a number of different factors. See Lanni, 259 F.3d. at 151; Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d

Cir. 1995). These factors include, but are not limited to: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship of the clients; and (12) awards in similar cases. Hensley v. Eckerhart, 461 U.S. 424, 429-30 n.3 (1983).

A plaintiff's fee petition must be specific enough to allow the court to determine if the hours claimed are unreasonable for the work performed. Washington v. Phila. County Ct. Of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996). Nevertheless, exacting detail is not necessary: "a fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations .... However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Id. at 1037-38 (internal quotation marks omitted). The time to

prepare and present an application for fees is recoverable.
Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001).  The
lodestar and Hensley reduction analysis also applies to the
claimed fees to prepare a fee petition. Id. at 188.

This Court has reviewed plaintiffs' multiple submissions for
attorney's fees and provides the following summary.  Plaintiffs'
total claim for fees and costs is $47,529.74.  Plaintiffs claim
they incurred $37,861.25 in fees, $6,737.50 in expert costs, and
$2,930.99 in other disbursements.  As to fees, plaintiffs claim
reimbursement for four attorneys and one paralegal.  Plaintiffs'
New Jersey counsel submitted a fee application totaling
$6,993.50, which is comprised of $6,870.00 in fees and $123.50 in
costs.  Plaintiffs' lead counsel in this case is John P. Fuller,
Esquire, from North Miami, Florida.  Mr. Fuller was admitted pro
hac vice on August 17, 2005 [Doc. No.  14].  Mr. Fuller claims he
worked 73.85 hours on this case at a rate of $325.00, thereby
resulting in a fee claim of $24,001.25 for his services.  Mr.
Fuller's partner claims he worked 4.6 hours on this file at
$325.00 per hour resulting in a fee claim of $1,495.00.  One
associate worked on this file for 22 hours at a $240.00 rate
resulting in a fee claim of $5,280.00.  One paralegal worked on
this file for a total of 2.6 hours and presents a fee claim of
$215.00.

With regard to the hourly rates charged by plaintiffs'

14

attorneys, defendant concedes they are reasonable. (<u>See</u> Tr. at
33:6-14). Based on this admission and other relevant authority,
the Court finds that the hourly rates charged by plaintiffs'
counsel are reasonable.

Although defendant's objections to plaintiffs' fee claim is
difficult to decipher, it appears the objections fit into the
following categories: (1) "multiple lawyers" worked on the case
at the same time and some work was duplicated; (2) significant
work should not have been spent on this case because defendant
agreed at an early date to accommodate plaintiffs' ADA concerns;
and (3) the time spent on some specific tasks was excessive. In
addition, defendant argues that the "catalyst" test for
determining prevailing party status under the ADA is applicable
to plaintiffs' fee application. ("Plaintiffs' lawsuit must be
causally linked to the achievement of their relief obtained, and
the defendant must not have acted wholly gratuitously, ...." (<u>See</u>
Defendant's January 25, 2006 Letter Brief, p. 6). All of
defendant's objections will be examined in this Court's fee
analysis.

It is axiomatic that in determining a reasonable fee hours
that are "excessive, redundant, or otherwise unnecessary" are
excluded. <u>Hensley</u>, 461 U.S. at 434; <u>Maldonado</u>, 256 F.3d at 184.
<u>See also Planned Parenthood</u>, 297 F.3d at 266 (for work to be
included in the calculation of reasonable attorney's fees, the

15

work must be useful and of a type ordinarily necessary to obtain the result in the litigation).   After closely scrutinizing plaintiffs' fee claim this Court is constrained to conclude that not all of the time plaintiffs' lawyers spent on this case was reasonable.

This Court starts its fee claim analysis by examining the fee submission of plaintiffs' New Jersey counsel.  This counsel's hourly rate is $300.  After reviewing the bills in detail, the Court believes that only 12.2 hours ($3,660) of the claimed 22.9 hours was reasonably spent.  Without specifying every last deduction in detail, the Court deducted time spent on administrative tasks such as filing, excessive time for reviewing and drafting straightforward correspondence, duplicate time spent on tasks other counsel performed, and time spent on unnecessary motions.

Plaintiffs lead counsel in this case is Fuller, Fuller & Associates, P.A., from North Miami, Florida.  Plaintiffs' trial counsel is John P. Fuller, Esquire, an experienced ADA practitioner.  As to the fee claim of Florida counsel, the Court also believes that not all of their time was reasonably spent. Starting with the bills of Mr. Fuller's associate, he claims he spent 22 hours on the case at an hourly rate of $240.  The Court reviewed these time entries in detail and for the same reasons applicable to Mr. Ackerman's bills the Court determined that 5.4

16

hours was not reasonably spent.  Accordingly, the associate's
claim for 16.6 hours ($3,984) is approved.   Mr. Fuller's partner
asks for reimbursement of 4.6 hours at the rate of $325 per hour.
The Court reviewed these bills and determined that .6 hours was
not reasonably spent.  Accordingly, Mr. Fuller's partner's claim
for 4 hours ($1,300)is approved.  A paralegal made a claim for
$215 but this is denied because the time entry is not
appropriately documented.

Lastly, Mr. Fuller's claim for 73.85 hours must be reduced.
This is primarily due to the fact that counsel spent substantial
time preparing and filing motions to enforce a settlement when he
knew that defendant had not agreed to all material settlement
terms.[5]  The Court does not believe it was reasonable for counsel
to spend significant time to prepare and file unnecessary and
premature motions.  To be sure, the Court is not unsympathetic to
plaintiffs' plight.  The Court recognizes that plaintiffs
received "mixed signals" from defendant regarding whether a final
settlement was reached.  However, the appropriate course an
experienced and skilled ADA litigator such as Mr. Fuller should

---

[5]Plaintiffs filed their first motion for attorney's fees on
November 28, 2005 [Doc. No. 17] and thereafter filed a series of
related motions on February 13, 2006 [Doc. No. 20], April 19,
2006 [Doc. No. 25], June 29, 2006 [Doc. Nos. 30, 31], July 21,
2006 [Doc. No. 33], August 16, 2006 [Doc. No. 38], August 18,
2006 [Doc. No. 39], and December 11, 2006 [Doc. No. 45].  It
appears from plaintiffs' fee application that Mr. Fuller prepared
virtually all of these motions.

have taken, especially a litigator who was or should have been
familiar with the applicable local practice, was to request an
in-person court conference to finalize the settlement.  If this
had been done, not only would the case have settled earlier, but
plaintiffs would have substantially reduced the time they spent
on the case.  This is aptly demonstrated by the fact that when
the parties' trial counsel met for the first time in court on
December 6, 2006, they reached a final settlement agreement.

     On the other hand, the Court cannot accept in toto
defendant's arguments.  Defendant's primary argument in response
to plaintiffs' fee request is that plaintiffs' hours are
excessive and "pumped up because the defendant essentially agreed
from the onset to the terms of the proposed Consent Decree but
for a few minor adjustments in its form and some inconsequential
provisions."[6]  (See Defendant's January 25, 2006 letter, attached
to its December 4, 2006 letter to Judge Rosen, pp. 6-7).
Defendant cannot have it both ways.  On numerous occasions it
argued that the parties did not settle.  It is therefore
disingenuous for defendant to now argue plaintiffs spent too much
time on the case because defendant agreed to settle early.

-------------------------

     [6]As a result, Defendant argues, "most of Plaintiffs'
attorney fees are inflated and not necessary." Id. at 1.
Defendant further argues, "Therefore, with all due respect and
deference to the careers and experience of my colleagues from
Florida, the skill of an attorney required to provide legal
services in this case did not exactly require the 'Allan
Dershowitz' of ADA law." Id. at 7.

This Court has done an exhaustive analysis of Mr. Fuller's fee application to segregate and total the time spent on unnecessary motion practice. The Court has determined that plaintiffs spent 37.35 hours on unnecessary motions. The Court is also reducing the time plaintiffs spent to prepare their fee petition by 4.5 hours because it believes the time was excessive. Thus, the Court is approving Mr. Fuller's fee claim for 32 hours ($10,400).[7]

The Court also notes that much of defendant's objections to plaintiffs' fees is premised on an erroneous legal argument. Defendant repeatedly argues that plaintiffs are not prevailing parties. (See id. at 1-2, 7). Plaintiffs also argue the "catalyst test" should be used to determine prevailing party status. Id. at 6. ("Plaintiff's lawsuit must be casually linked to achievement of relief obtained, and the defendant must not have acted wholly gratuitously, ...").[8] Plaintiffs are wrong. In Buckhannon, the Supreme Court held that a party that secures a settlement agreement enforced through a consent decree is a prevailing party under the ADA. 532 U.S. at 604. The Court also

---

[7]The Court's evaluation of defendant's specific objections to several of plaintiffs' time entries is subsumed within the fee analysis discussed in this Opinion.

[8]The "catalyst theory" posits that a plaintiff is a prevailing party "if it achieves the desired result because the lawsuit brought about a voluntary change in defendant's conduct." Buckhannon, 532 U.S. at 601.

held that the "catalyst theory" is not applicable in ADA
litigation because this theory does not necessitate that a party
attain court-ordered relief before recovering fees.  Id. at 605.

The authority to award reasonable attorney's fees "includes
the authority to award reasonable out-of-pocket expenses ...
normally charged to a fee-paying client, in the course of
providing legal services."  Planned Parenthood, 297 F.3d at 267
(citations omitted).  As to plaintiffs' claim for expert fees and
expenses totaling $9,668.49, defendant has not voiced any
substantial objections.  Nevertheless, the Court has
independently reviewed these fees and costs and determined they
are reasonable.  The most significant expenditure was for expert
fees ($6,737.50) which is reasonable under the circumstances.  In
fact, plaintiffs' expert report was essentially copied verbatim
into the final Consent Decree.  Defendant also objects to
plaintiffs' fee for travel time but this is recoverable.  Id.

In summary, the Court approves plaintiffs' claim for
attorneys' fees in the total amount of $19,344.  This is
comprised of the following:

```
A. Ackerman -    12.2 X $300   =$ 3,660
D. Fuller   -    32.0 X $325   = 10,400
Partner     -     4.0 X $325   =  1,300
Associate   -    16.6 X $240   =  3,984
TOTAL                            $19,344
```

Plaintiffs' claim for expert fees ($6,737.50) and other
disbursements ($2,930.99) is approved without any deductions.

For all the foregoing reasons, the Court grants Plaintiffs' Motion for Reconsideration, deems the parties to have settled pursuant to the terms of the agreed upon Consent Decree, and enters an Order deeming plaintiffs to be prevailing parties and awarding plaintiffs attorneys' fees and costs in the total amount of $29,012.49.  An appropriate Order will be entered.

                                    s/ Joel Schneider
                                    JOEL SCHNEIDER
                                    United States Magistrate Judge

Dated: February 27, 2007